36  519
45  986

36  519
50  1069

36  519
52  2056

## No. 8930.

## W. G. HENRY VS. PAUL TRICOU.

A motion to dismiss for incompleteness of the record must contain specifications of the particulars in which it is incomplete.

The fact that an appeal to the court of appeals was taken simultaneous with an appeal to this court is no ground for dismissal of the appeal here, there being no suggestion of our want of jurisdiction .

An assignment of errors is in time if filed within ten days after the appeal is lodged in this Court.

An assignment of errors on appeal (C. P. 897) is not entirely vitiated because it contains grounds involving alleged errors of fact.

The only effect is that such grounds will be disregarded by the appellate court, but alleged errors of law appearing on the face of the record will be considered and passed upon.

Property in the possession of the sheriff under a legal writ at the instance of a judgment and privileged creditor cannot be seized and sold to the injury and detriment of such

creditor. All that can be seized are the rights and interest of the debtor subject to the pre-existing execution.

The purchaser of such rights cannot as such enjoin and restrain the previous execution.

The recent amendment to the Constitution touching the appellate jurisdiction of this Court, does not apply to a case in which the ownership of property valued at $2000 and damages assessed at $100, are claimed.

A petition for a rehearing which urges the points previously pressed and passed upon, offers no merit.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor J.*

---

*T. M. Gill* for Plaintiff and Appellant.

*Braughn, Buck & Dinkelspiel* and *W. O. Hart* for Intervenor and Appellee.

---

### On Motion to Dismiss.

The opinion of the Court was delivered by

MANNING, J. The motion is based on five grounds:—

1. Non-compliance with Rule 1 of this Court, in that "the record is not copied chronologically, and many unnecessary papers appear."

If we should begin dismissing appeals from this cause, we should clear the docket with unexampled rapidity.

2. The mover files "a certified copy of the docket of the lower court, from an examination of which and comparison with the transcript, the latter will be found defective and incomplete."

The copy consists of five pages of entries, each line of each page containing but one entry, and from this mass it seems we are expected to pick out such as are not found in the transcript, there being no specification of any. We are not equal to that undertaking.

3. "The return of the sheriff dated June 27, 1883, is given in the record while the judgment appealed from was rendered April 3, 1883, long prior."

At this stage of the case we are unable to understand what this means, or what bearing it has upon this motion.

4. That an appeal from the judgment in this suit was taken to the court of appeals at the same time this appeal was taken, and is still pending there.

That does not affect the question of our jurisdiction, for if we have jurisdiction we must exercise it, and it does not yet appear that we have not, nor does the mover suggest that we have not.

5. That there is not in the record any testimony, or statement of facts, or bills of exception, or assignments of errors.

An assignment of errors was filed within ten days after the record was brought up. Code Prac. art. 897.

The motion is refused.

## ON THE MERITS.

Poché, J. The following are the salient facts of this very complicated litigation :

Plaintiff obtained a moneyed judgment against the defendant, with recognition of a privilege on a grist mill, apparently owned by, and then in the possession of, his debtor.

At the date of bringing his suit, March 22, 1882, he obtained a writ of sequestration of the mill, which was subsequently seized under a writ of *fieri facias*, on his judgment, on the third of May following.

In the progress of his execution he was first encumbered by an injunction at the instance of S. D. Moody, who claimed to be, and was judicially recognized, as the owner by purchase from Tricou, of one undivided half of the mill.

The judgment in favor of Moody was affirmed on appeal by the Court of Appeals, and is now final.

After ordering the sheriff to proceed with the seizure as to the remaining half of the mill, plaintiff was next encountered by an injunction at the instance of Isaac Ullmann, who claimed ownership of the whole mill, for the one-half by purchase from Moody ; and for the other half by purchase at a sheriff's sale in execution of a judgment rendered by the Second City Court of New Orleans, in the suit of McEnany against Paul Tricou, the defendant herein, in which case the property in question was adjudicated to him on June the 10th, 1882.

Ullmann's injunction was maintained by the lower court, and he was recognized as owner of the entire mill. The present appeal was taken from that judgment.

From the foregoing statement it appears that the ownership of Ullmann to the half of the mill, which he acquired from Moody, has been settled by a final judgment of the Court of Appeals, and that that branch of the litigation is now eliminated from further discussion.

The question to be determined by us involves the validity of the title set up by Ullmann, under the adjudication made to him by the sheriff, in the case of McEnany vs. Tricou, from the City Court.

At this stage of our opinion we note Ullmann's objections to the condition of the transcript, which does not contain the evidence taken on the trial below, and which is charged to be defective in several other

respects. These objections have been disposed of in our opinion on the motion to dismiss.

But we are told that plaintiff's assignment of errors does not comply with the legal requisites, and that the errors assigned involve findings of the lower court on questions of fact, and are not errors appearing on the face of the record.

Several of the grounds relied upon by appellant are amenable to that objection, and of course such grounds should not and will not be considered or entertained by us on this appeal.

But such defects cannot and do not vitiate the whole document, and hence they do not preclude an examination of such errors as are apparent on the face of the record.

Of such a category is the alleged error of the lower court in holding that the sheriff, who had possession of property under the writs of sequestration and of *fieri facias,* issued at the instance of the plaintiff, could make a seizure and a sale of the property under a subsequent writ of *fi. fa.* at the instance of a third party, to the detriment of the previous writs, under which he held the property, and in a manner to destroy and annihilate the rights of a previous seizing creditor.

The mere statement of this proposition finds its answer in the elementary rules of our practice.

In this case the record shows that when the sheriff executed the writ of *fi. fa.* in the case of McEnany, he had possession of the property in question under plaintiff's writs, in execution of his judgment and in the enforcement of his judicially recognized privilege.

It is plain, therefore, that by his subsequent seizure the sheriff could not divest plaintiff of his previously acquired rights. And from his return, which is made part of Ullmann's petition, it is clear that the sheriff did not attempt to operate such a result, for he therein informs us that, what he purported to seize and what he sold to Ullmann in the McEnany execution, were "the right, title and interest of defendant, Paul Tricou, the one undivided half interest in and to the ownership of" a certain mill, etc.,

Such a seizure and the sale made thereunder, could not affect the rights of plaintiff under his judgment and under his two writs. The title which Ullmann acquired by his purchase at that sale, was the interest of Tricou, the defendant in execution, and no more. It is too plain for discussion that such a title conferred on Ullmann no greater power than Tricou himself could exert in the premises, and certainly he thus acquired no right to enjoin plaintiff's execution. 1 A. 174, Michel vs. Her Husband.

The district judge, therefore, erred in maintaining Ullmann's injunction, in so far as it restrains the seizure of one undivided half of the mill, and plaintiff is entitled to statutory damages, which he prays for. Under these views of the controversy, it becomes unnecessary to notice or discuss and decide many other issues and points made in the case.

The judgment appealed from is, therefore, annulled and set aside, the injunction obtained by Ullmann is, therefore, dissolved as to one-half of the mill under seizure, and his petition for injunction is dismissed at his costs in both courts.

And it is further ordered that Isaac Ullmann and his surety on the injunction bond be condemned to pay twenty per cent damages on plaintiff's judgment.

BERMUDEZ, C. J. In this case, counsel for intervenor having called the attention of the Court to the fact that, in his opinion, this court has ceased to have jurisdiction over this case in consequence of the recent amendment to Article 81, and requested a solution of the question, that he may be apprised whether an application for a rehearing will or not be entertained.

The Court answers that the matter will be considered and determined when the application shall have been filed.

ON APPLICATION FOR REHEARING.

BERMUDEZ, C. J. The intervenor, Ullmann, claims:

1. That this Court had no jurisdiction over this case when it was decided, and were the Court to hold otherwise, he charges:

2. That the judgment rendered is erroneous in several respects.

I.

It is true that this case was decided after the promulgation of the Governor's proclamation of the adoption of amendment to Article 81 of the Constitution; but, whether it was then determined or not, is immaterial, for the reason that the suit brought by Ullmann, in the form of an intervention, coupled with an injunction, involved the ownership of the whole mill, under two different titles, one to half from Moody, another to the remaining half from a sheriff's sale, under a writ levied after seizure under plaintiff's writ. The mill was worth two thousand dollars and one hundred dollars for damages were claimed *insupra.* So that the controversy involved $2100, and is one over which this Court would still have jurisdiction to determine.

II.

The petition for a rehearing does not state any ground which was not urged previously and is devoid of merit.

Rehearing refused.